**ARROYO VISTA PARTNERS, Plaintiff,**

v.

**COUNTY OF SANTA BARBARA and Board of Supervisors of the County of Santa Barbara, Defendants.**

No. CV 89–5959 RB(JRx).

United States District Court, C.D. California.

March 7, 1990.

Kenneth B. Bley, Tamar C. Stein, Lisa A. Steres of Cox, Castle & Nicholson, Los Angeles, Cal., Frederick W. Clough of Schramm & Raddie, Santa Barbara, Cal., for plaintiff.

Stephen Shane Stark, Deputy County Counsel, Santa Barbara, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

BONNER, District Judge.

Defendant County of Santa Barbara moves to dismiss the complaint pursuant to Rules 12(b)(6) and 12(b)(1), Fed.R.Civ.P. or, in the alternative, requests the Court abstain from the exercise of jurisdiction and dismiss or stay the case because resolution of state law claims may obviate the need for constitutional adjudication in federal court. Hearing on the County's motions was held on February 12, 1990. For the reasons explained below, the Court grants the County's motion to dismiss the complaint.

### BACKGROUND

Plaintiff Arroyo Vista Partners ("ARROYO VISTA"), a California real estate development partnership, brought this action against the County of Santa Barbara ("COUNTY") and the Board of Supervisors for Santa Barbara County ("BOARD") for alleged violations of 42 U.S.C. § 1983, for writs of mandamus under federal law, and for an unlawful taking of property under the California Constitution. Plaintiff has not brought suit against any individual member of the Board or other County official as a defendant in any capacity.

On July 18, 1989 the Board of Supervisors denied Plaintiff Arroyo Vista's applications for (1) a final development plan for 146 housing units and (2) a Tentative Tract Map for 146 lots in connection with a proposed 39–acre residential development project of unimproved real property—which is the subject of this action—known as "Winchester Common" in Goleta, in Santa Barbara County.[1] As provided by California law, the Board adopted written findings after concluding that the project as proposed was inconsistent with the County's Comprehensive Plan and the requirements of the applicable County zoning ordinance which sets forth the County's development standards and review procedures.

Plaintiff challenges the Board's decision to withhold the land use permits as violating its federal constitutional rights mandated by substantive and procedural due process, equal protection of the laws and the First Amendment to the U.S. Constitution. Arroyo Vista alleges that one supervisor, William Wallace, opposed the project because Arroyo Vista supported his opponent (James Thompson) in Wallace's re-election bid for the Board. Arroyo Vista further alleges that the Board engaged in an impermissible custom and policy of "ward courtesy" by which other members of the Board deferred to the vote of the Board member in whose district the proposed project was to be developed.[2] There is no allegation that the four supervisors who allegedly "deferred" to Supervisor Wallace shared in or even were cognizant of his purported political vendetta against Arroyo Vista.[3]

Arroyo Vista alleges four federal claims pursuant to 42 U.S.C. § 1983 to redress violation of its rights guaranteed by (1) substantive due process; (2) procedural due process; (3) the equal protection clause of the Fourteenth Amendment; and (4) the First Amendment. In addition, Arroyo Vista alleges four pendent federal claims pursuant to 28 U.S.C. § 1651 (Claims 5–8) seeking writs of mandamus compelling the Board to grant the land use permits in question based upon the alleged violations of § 1983. Plaintiff's final and ninth claim is a pendent state claim under the California Constitution for taking without just

---

1. The Board also denied a conditional use permit for a child care center intended to serve the residents of the proposed development.

2. A majority of the five voting Supervisors is necessary to approve development of projects. *See* Cal.Govt.Code, Section 25005.

3. In this regard, Arroyo's complaint alleges:

"A. The custom, habit, and policy of the Board to defer to the Supervisor in whose district the property is located in reaching land use determinations precluded Arroyo Vista from receiving a fair and unbiased hearing in accordance with the procedures mandated by the laws of the State of California and the County of Santa Barbara ..." *See* Complaint at para. 50(A).

compensation.[4]

## DISCUSSION

### 1. Standard of Review

As a general matter, "[t]he conditions that must be met before a motion may be granted under Fed.R.Civ.P. 12(b)(6) are quite strict. '[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45–46 [78 S.Ct. 99, 102, 2 L.Ed.2d 80] (1957). In applying this standard, [the court] must treat all of the plaintiff's allegations as true." *Church of Scientology of California v. Flynn*, 744 F.2d 694, 695–96 (9th Cir.1984) (some citations omitted); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Thus, "[o]n a motion to dismiss, material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff." *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir.1983).

In view of the liberal pleading requirements of the Federal Rules of Civil Procedure, a high burden is imposed upon a defendant seeking to prevail on a motion to dismiss a complaint. Nothwithstanding this burden, a federal claim involving land use must be viewed with particular scrutiny because it challenges local zoning decisions, a sensitive area of social policy best resolved without resort to federal court intervention, absent sufficient allegations of constitutional error. "Federal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for 'irrationality or arbitrariness' is proper only if the governmental body could have had no legitimate reason for its decision." *Shelton v. City of College Station*, 780 F.2d 475, 484 (5th Cir. 1986) *(en banc) cert. denied College Station v. Shelton*, 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986). In reviewing the instant complaint, the Court is appropriately mindful that the federal courts are not land use czars, and "should not become zoning boards of appeal to review nonconstitutional land use determinations." *Sullivan v. Town of Salem*, 805 F.2d 81, 82 (2d Cir.1986).

### 2. Analysis

a) 12(b)(1) Motion for Lack of Jurisdiction Based on Ripeness of § 1983 Claims

■ The County argues that the courts have erected "imposing barriers in guarding against the federal courts becoming the Grand Mufti of local zoning boards." *Hoehne v. County of San Benito*, 870 F.2d 529 (9th Cir.1989). Specifically, defendant cites *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) which sets forth a two-prong ripeness test for a federal taking claim.[5] But, *Williamson* is not applicable to the case at bar inasmuch as the plaintiff has carefully avoided alleging a federal taking claim. Instead, the plaintiff asserts a pendent state law taking claim.

With respect to plaintiff's claims arising under due process, equal protection, and the First Amendment, the second prong of the *Williamson* test does not apply, and, moreover, does not preclude these causes of action. As the Ninth Circuit held in *Sinaloa Lake Owners Ass'n. v. City of Simi Valley*, 864 F.2d 1475 (9th Cir.1989) *superceded* 882 F.2d 1398, the requirement of exhausting available state compensation remedies "has no application to other types of constitutional claims, even where those

4. Plaintiffs do not allege a violation of the taking clause under the Fifth Amendment of the U.S. Constitution made applicable to the County through the Fourteenth Amendment.

5. The first requirement is that a federal court may not hear a federal taking claim unless the governmental entity has reached a final decision on the development application ("finality" prong). This test is satisfied. The second prong requires the plaintiff first seek compensation through the procedures the State has provided. This test has not yet been satisfied, but, as discussed, does not apply to federal constitutional challenges other than a "just compensation" claim for taking of property.

claims arise out of facts that will also give rise to a [federal] taking claim ... [due] process may be violated regardless of the availability of post-deprivation remedies." *Sinaloa,* 864 F.2d at 1481–83.

Thus, the exhaustion of state compensation remedies doctrine does not bar Arroyo Vista's constitutional claims arising out of the same facts upon which a federal taking claim could have been, but was not, raised. *Accord Herrington v. Sonoma County,* 834 F.2d 1488, 1499 n. 10 (9th Cir.1987), *cert. denied* —— U.S. ——, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989). The motion to dismiss based on lack of ripeness, Rule 12(b)(1), is therefore denied.

b) 12(b)(6) Motion for Failure to State Claims

The County asserts that the first, second and fourth claims of Arroyo Vista's complaint fail to state a claim for relief because they do not allege action taken under color of state law. Additionally, the County contends the first through fourth claims should be dismissed because of failure to allege a federally protected property right.

1. *42 U.S.C. § 1983* (Deprivation of a Federal Right Under Color of State Law)

■ The two essential elements of an action under § 1983 are: 1) that the conduct complained of was committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the U.S. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Although the first requirement is met in this case, the plaintiff has failed to identify any federally protected right of which it was deprived when the Board denied its development application.

■ As noted above, federal courts do not sit as a super zoning board or a zoning board of appeals. *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir.1985) *cert. denied Raskiewicz v. Town of New Boston,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985) (where the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983).

Plaintiff fails to cite any authority which holds the practice of "ward custody" ("gentlemen's agreements"), without more, results in a zoning applicant receiving less than his constitutional due. The Supreme Court, as stated in *Chongris v. Board of Appeal of Town of Andover,* 811 F.2d 36, 40 (1st Cir.1987) *cert. denied Chongris v. Andover,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987) "has repeatedly observed that not every deprivation of property attributable to state action sinks to the depth of a fourteenth amendment violation. Where state procedures—though arguably imperfect—provide a suitable form of pre-deprivation hearing coupled with the availability of meaningful judicial review, the fourteenth amendment guarantee of procedural due process is not embarrassed."

Plaintiff's reliance on *Hornsby v. Allen,* 326 F.2d 605 (5th Cir.1964) is misplaced. In *Hornsby,* the Fifth Circuit held that the practice of "ward courtesy" unreasonably denied the plaintiff's application for a liquor license in violation of her rights to a hearing accorded by procedural due process guarantees. The court stated: "[I]f her application actually was denied because the delegation from her ward decided ... that Mrs. Hornsby should not be issued a liquor license, then she was deprived of the hearing which due process requires, since she could not discover the claims of those opposing her and subject their evidence to cross-examination." However, *Hornsby,* a licensing case, does not govern discretionary land use decisions such as that involved in the case at bar. *See Jackson Court Condominiums v. City of New Orleans,* 874 F.2d 1070 (5th Cir.1989) where the Fifth Circuit explicitly held that *"Hornsby* does not apply to zoning cases." *Id.* at 1076. Moreover, plaintiff in the instant action does not allege it was deprived of an opportunity to know of the objective standards that had to be met to obtain the permit, as did the plaintiff in *Hornsby.*

Before considering the merits of Arroyo Vista's due process claim, Judge Posner's

comments, made in a similar case, on the overlap between substantive and procedural due process in the zoning context are instructive:

> the line between "procedure" and "substance" is hazy in the setting of the regulation of land uses. The denial of the plaintiffs' site plan without a full statement of reasons is what gives the denial such arbitrary cast as it may have, and thus lends color to the claim of irrationality, which is the substantive due process claim; but the failure to give reasons is also the cornerstone of the procedural due process claim. It is no good saying that if a person is deprived of property for a bad reason it violates substantive due process and if for no reason it violates procedural due process. *Unless the bad reason is invidious or irrational, the deprivation is constitutional; and the no-reason case will sometimes be a case of invidious or irrational deprivation, too, depending on the motives and consequences of the challenged action.*[6]

*Sinaloa Lake Owners Ass'n. v. City of Simi Valley*, 882 F.2d 1398, 1410 n. 14 (9th Cir.1989). [emphasis added].

## 2. *Procedural Due Process*

■ At the core of the due process clause is the right to notice and a hearing at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Ordinarily, due process of law requires an opportunity for some kind of hearing prior to the deprivation of a significant property interest. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978). Thus, for instance, in *Sinaloa* the defendant failed to give the plaintiffs notice and an opportunity for a hearing before destroying a lake formed by a privately owned dam. On that basis, the Ninth Circuit concluded that plaintiffs stated a claim for denial of procedural due process.

The allegations in the case at bar fall far short of an absence of notice and opportunity to be heard. To the contrary, the Board's decision was subjected to public hearings and testimony as required by the procedures of California land use review. Plaintiff cannot and does not allege otherwise. Unless "ward courtesy" of the form allegedly practiced by the Santa Barbara County Board of Supervisors is an impermissible procedure in and of itself, the plaintiff fails to set forth a procedural due process claim.

"Ward courtesy" is a practice commonly resorted to in the decision-making process of legislative bodies. In essence, elected members of a legislative body defer their judgment to one of its members whose district will be directly affected by a decision of that body. Plaintiff has not cited a single case holding that such a practice, when exercised by a quasi-executive entity whose authority in land use matters is discretionary, violates procedural due process standards. Regardless, the Court need not decide whether the exercise of ward courtesy can under any circumstances violate procedural due process because a state provides adequate procedural due process when it offers reasonable remedies to rectify a legal error by a local administrative body. *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 879 (9th Cir.1987) *cert. denied* ⸺ U.S. ⸺, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988) is controlling on this point. *See also Brady v. Town of Colchester*, 863 F.2d 205, 211 (2nd Cir.1988) (deprivations of property attributed to unauthorized conduct of state officials do not violate due process clause if state law provides adequate post-deprivation remedy such as a state forum to review the constitutionality of the defendant's actions).

In *Lake Nacimiento*, the availability of adequate state remedies defeated the property owner's claim that a particular county supervisor's participation in and vote in denying an amendment sought by the property owner foreclosed his procedural due

---

**6.** In trying to fit the case at bar within Judge Posner's typography, and assuming the Board's written findings for denial are pretextual, this lawsuit involves the "bad-reason case" in that plaintiff alleges a "bad reason" (Wallace's political vendetta tied to Board deference).

process challenge. Likewise in the case at bar, relief pursuant to a Writ of Mandate under § 1094.5 of the California Code of Civil Procedure is available to challenge the substance and evidentiary basis for a decision, and also extends to whether the Board proceeded in a manner that denied the plaintiff a fair hearing or otherwise suffered from procedural deficiencies in rendering its administrative decisions.

In *Lake Nacimiento,* the Ninth Circuit affirmed the district court's determination that *Parratt,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) required the plaintiff to first seek compensation, available under California law, before it could bring an action for deprivation of its right to procedural due process. As stated in *Lake Nacimiento,* the plaintiff "is essentially claiming that this process was tainted by a voting supervisor's conflict of interest. This type of procedural claim is governed by *Parratt." Id.* at 879. The Ninth Circuit held that *Parratt* applies whenever a procedure for redress of a deprivation of procedural due process is available under state law. The court concluded "the [plaintiff's] § 1983 claim is barred because there is an available state remedy." [7] Likewise in the case at bar, *Parratt* precludes Arroyo Vista's procedural due process attack on the Board's decision.

■ Finally, to state a procedural due process claim, plaintiff must also establish that he had a protectible property interest in his proposed development, and, if so, that he was denied this property right without the process which was due under the circumstances. "A property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by and an independent source, such as a state or federal law." *Parks v. Watson,* 716 F.2d 646, 656 (9th Cir.1983).

In this case, plaintiff is not entitled to a development permit in its favor. Arroyo Vista has failed to show that state or local law created an entitlement to approval of the proposed plat. *Bateson v. Geisse,* 857 F.2d 1300, 1305 (9th Cir.1988) (affirming the district court's holding that the plaintiff did not have a legitimate claim of entitlement to approval of his minor plat application).

### 3. Substantive Due Process

■ The Ninth Circuit continues to recognize that the due process clause includes a substantive component which guards against arbitrary and capricious governmental action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate. *Smith v. City of Fontana,* 818 F.2d 1411 (9th Cir.1987) *cert. denied Smith v. City of Fontana,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). "In zoning dispute cases, the principle of substantive due process assures property owners of the right to be free from arbitrary or irrational zoning actions." *See Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 267, 97 S.Ct. 555, 565, 50 L.Ed.2d 450 (1977). And, because substantive due process is violated at the moment the harm occurs, the existence of post-deprivation state remedies does not bar a § 1983 action. Thus, the rationale for requiring exhaustion of state compensation remedies in procedural due process challenges, *see e.g., Lake Nacimiento,* does not extend to a claim that the plaintiff was denied substantive due process. *Sinaloa,* 864 F.2d at 1484.

■ To establish a violation of substantive due process, the plaintiff must plead and ultimately prove that the Board's action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa,* 864 F.2d at 1484. Ac-

---

7. Additionally, the Court observes that *Sinaloa* is somewhat inconsistent with *Lake Nacimiento* by holding that *Parratt* did not bar plaintiffs' procedural due process claim. In *Sinaloa,* Judge Kozinski distinguished *Lake Nacimiento* on the ground that it involved an attack on the "decision-making process itself" whereas in *Si-*

*naloa* the plaintiffs "are challenging the defendants' decision, not merely the process by which it was reached." Nonetheless, the Court concludes that challenges based on procedural due process infirmities in the land use context are governed by *Parratt* in the Ninth Circuit.

cordingly, to succeed in a § 1983 suit for damages for a substantive due process violation, a plaintiff must minimally show that state officials are guilty of grave unfairness in the discharge of their legal responsibilities. (Deliberate and arbitrary abuse of government power violates an individual's right to substantive due process) *Bello v. Walker*, 840 F.2d 1124, 1129 (3d Cir. 1988) *cert. denied Walker v. Bello*, —— U.S. ——, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988) (district court's summary judgment on behalf of defendant city council reversed on plaintiff's due process violations where certain council members improperly interfered with the process by which the municipality issued building permits in a case where plaintiff was otherwise entitled under the law to the permit).

■ To be sure, governmental entities must enjoy significant latitude in carrying out their police power responsibilities. Nevertheless, malicious, irrational and plainly arbitrary actions are not within the legitimate purview of the state's power. Plaintiff, however, has not provided any support that, even if the Board has a custom and practice of "ward courtesy", it suffers from constitutional infirmity. *See Raskiewicz v. Town of New Boston*, 754 F.2d at n. 5 ("without suggesting where the line is to be drawn, the members of local boards have considerable leeway for the free exercise of their personal views before any possible due process claim might exist").

■ Absent the showing of improper personal motive or financial interest,[8] plaintiff cites no authority for its contention that one supervisor's vote against a political opponent's development project, without more, manifests invidious or irrational conduct sufficient to state a constitutional deprivation. Further, even assuming that Supervisor Wallace's motives were as alleged, plaintiffs do not allege that any of the other members of the Board, whose majority approval was required, knew of Wallace's impermissible bias or acted out

of political animus in casting their votes to deny the application. *See also Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023, 1036 (3d Cir.1987), *cert. denied* 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987) ("because it appears that on the face of the amended complaint that the Township decision-makers could have had rational reasons for the decisions contested here and because the complaint alleges no facts suggesting arbitrariness, it fails to state a substantive due process claim upon which relief can be granted").

Because the complaint does not allege that political animus by a majority of the Board resulted in an arbitrary, capricious or unreasonable decision or, for that matter, that any of the four other members of the Board were in any wise witting participants in giving effect to Supervisor Wallace's alleged political animus, the plaintiff has failed to state a claim for denial of substantive due process.

■ Further, it appears from the face of the complaint itself, *see* Exhibit "2" of the Complaint, that the Board could have had rational reasons for its decision based on legitimate criteria relating to land use, density, water availability and zoning considerations. Any of these factors would support the rational basis of its decision, wholly apart from any improper discriminatory intent that purportedly motivated only one member of the Board. Under the substantive due process clause, this Court defers to legislative judgment unless it could have no rational, legitimate foundation.

### 4. First Amendment and Equal Protection Claims

The plaintiff does not cite any authority relating to or supporting liability under these two claims for relief. Plaintiff alleges the Board's actions were designed to punish Arroyo Vista for the political support its general partner gave to the candidate opposing the re-election of Supervisor Wallace, and that the Board's retaliation

---

**8.** In *Jackson,* the Fifth Circuit rejected the substantive and procedural due process claims because they did not satisfy a showing of "actual unfairness or partiality, such as some personal or financial stake amounting to a conflict of interest to justify disqualification." *Id.* at 1077.

chilled protected political speech and the right of free association.

For this claim, plaintiff must plead and ultimately prove that its conduct was protected by the First Amendment and, second, that such conduct prompted retaliatory action by the Board. *Mount Healthy v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). In this regard, the plaintiff has not alleged facts which establish that the Board's conduct was prompted by plaintiff's exercise and pursuit of goals protected by the First Amendment. Instead, plaintiff alleges that the other members of the Board voted with Supervisor Wallace who allegedly had a political motive to retaliate against Arroyo Vista. However, the motives of elected officials in voting against a particular project generally are not susceptible to judicial second-guessing. *City of Fairfield v. Superior Court,* 14 Cal.3d 768, 122 Cal. Rptr. 543, 537 P.2d 375 (1975) ("it would be contrary to the basic principles of a free society to disqualify from service in the popular assembly those who had made pre-election commitments of policy on issues involved in the performance of their sworn ... duties. Such is not the bias or prejudice upon which the law looks askance").

Nonetheless, there are occasions when a wronged party may be able to state a valid claim for a First Amendment violation, for instance, where a majority of a local board denies a land developer a permit. *See Brady,* 863 F.2d at 216. ("plaintiffs may be able to prove that they were denied a permit and use of their property ... because of indefensible reasons such as impermissible political animus").[9]

With regard to the equal protection challenge, the issue is whether all persons similarly situated were treated alike. *City of Cleburne v. Cleburne Living Center, Inc.* 473 U.S. 432, 439, 105 S.Ct. 3249, 3253–54, 87 L.Ed.2d 313 (1985). To state an equal protection claim, a plaintiff must charge a governmental body not only with deliberately acting against the plaintiff, but

also with singling him out for selective enforcement on an impermissible basis. *Brady,* 863 F.2d at 216.

Both plaintiff's First Amendment and equal protection challenges are defective. Plaintiff asserts no claim against any of the individual members of the Board. Rather, Arroyo Vista brings this action against the entire Board and the County. But, even assuming that one member of the Board had purposefully retaliated against the plaintiff for the exercise of First Amendment rights, or had invidiously singled plaintiff out for disparate treatment based on an impermissible reason, the allegations are insufficient to state torts of constitutional dimension against the Board itself. There is simply no allegation in the complaint that the Board, or at least a majority of the Board, intentionally retaliated or discriminated against plaintiff for constitutionally suspect motives. To prevail, plaintiff is required to plead and prove that a majority of the Board so acted. The allegation of "ward courtesy" is not sufficient, as a matter of law, to hold the Board as a political body, or the County, as a governmental subdivision, liable under § 1983.

Plaintiff's allegations which seek to link Supervisor Wallace's motives with a policy or custom of the Board *i.e.,* the practice of ward courtesy does not establish liability against the Board or County under *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Arroyo Vista accuses the Board of a failure to act by asserting that it has, in effect, abdicated its decision-making responsibility in deference to the supervisor representing the affected district. But, where liability of a local government is predicated upon a failure to act, fault must be shown by a background of events and circumstances which establish that the policy of inaction is the functional equivalent of a decision by policymakers to violate the Constitution. *City of*

---

**9.** In *Brady,* for example, because the record produced sufficient evidence to support plaintiff's substantive due process claim, as well as

the First Amendment claim, the Second Circuit reversed the trial court's grant of summary judgment on behalf of defendant.

*Canton, Ohio v. Harris,* 489 U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Arroyo Vista has failed to allege that any of the other four supervisors made a "deliberate choice" for impermissible or partisan political motives to deny the development application. *See Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (municipal liability is limited to action for which the municipality is actually responsible, that is, acts which the municipality has officially sanctioned or ordered).

As the Supreme Court has recognized, special difficulties arise when it is contended that a municipal policymaker has delegated policymaking authority to another official. *See Pembaur,* 475 U.S., at 482–83, and n. 12, 106 S.Ct. at 1300, n. 12. Nevertheless, simply going along with discretionary decisions made by other city officials is not a delegation to them of the authority to make policy. *St. Louis v. Praprotnik,* 485 U.S. 112, 130, 108 S.Ct. 915, 927, 99 L.Ed.2d 107 (1987).

In undertaking to define more precisely "final policymaking authority" to determine when an isolated decision on a single occasion, resulting from a policy that while not unconstitutional in and of itself, may be enough to establish an unconstitutional municipal policy exposing a city to § 1983 liability, the Court recently held: "[T]he mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where [as here] the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy." *Praprotnik,* 485 U.S. 112, 130, 108 S.Ct. 915, 927, 99 L.Ed.2d 107.

Further, the Court in *Praprotnik* noted that the district court did not find that either of the two city employees who were involved in the plaintiff's ultimate layoff shared the constitutionally impermissible animus of the plaintiff's supervisor who initially orchestrated the plaintiff's firing, allegedly based on retaliatory actions. Because the court identified only one unlawfully motivated municipal employee involved in the plaintiff's layoff, the Court found that "the city may not be held accountable for any constitutional wrong [plaintiff] may have suffered." *Id.* at 142, 108 S.Ct. at 933 (Brennan, J., concurring).

"Ward courtesy", even if proved to be a custom, practice, or policy of the Board of Supervisors of the County of Santa Barbara, therefore is not, in and of itself, a violation of the federal Constitution, and there is no allegation that the Board had a policy or custom of sanctioning violations of the First Amendment or denials of equal protection. Moreover, under the rationale of *Praprotnik,* Supervisor Wallace's vote, even if impermissibly retaliatory, cannot be said to reflect the County's policy. In this regard, it is noteworthy that plaintiff has not shown any support in the law that the mere custom of "ward courtesy" is predicated on an constitutionally irrational factor that runs afoul of the Board's legitimate authority under its police powers in the land use arena.

### 5. *Writs of Mandamus*

 The fifth through eighth claims for relief seek writs of mandamus from this Court to review the Board's decisions denying the development plan. In exceptional circumstances, a petition under the All Writs Act, 28 U.S.C. § 1651, invests authority in the district court to review an administrative action to determine whether the officers of an agency abused their discretion in the performance of their duties.

 The All Writs Act does not operate to confer federal jurisdiction, but may be invoked by the district court in aid of jurisdiction over claims with an independent basis of jurisdiction. Relief in mandamus requires the action owed to plaintiff to be ministerial and "so plainly prescribed as to be free from doubt." *Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers,* 520 F.2d 11, 25 (3d Cir. 1975). In this case, the denial of the discretionary permit applications for Arroyo Vista's development project can hardly be considered a ministerial act devoid of the exercise of judgment and discretion, and, there-

fore is not compellable by mandamus. Further, mandamus is proper only when a party has no other adequate means to obtain relief and his right to relief is clear and indisputable. *Whitlock's Estate v. CIR,* 547 F.2d 506 (10th Cir.1976) *cert. denied* 430 U.S. 916, 97 S.Ct. 1329, 51 L.Ed.2d 594 (1977). Arroyo Vista has a remedy in the form of judicial review by writ of mandate under California Code of Civil Procedure § 1094.5. *See Kling v. City Council,* 155 C.A.2d 309, 317 P.2d 708 (1957). The claims five through eight requesting federal writs of mandamus are therefore dismissed.

6. *Pendent State Claim* (Taking Based on the California Constitution)

■ Plaintiff's Ninth Claim for Taking based on the California Constitution, Article I, § 19, is predicated on pendent jurisdiction. Because of the foregoing rulings dismissing the federal actions brought under 42 U.S.C. § 1983, the Court is without jurisdiction over the pendent state claim. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and, therefore, the ninth claim for relief is dismissed.

In light of the foregoing disposition, it is unnecessary at this time to consider defendant's contention that the Court should invoke the doctrine of abstention under *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and postpone the exercise of federal jurisdiction over this case.

## CONCLUSION

For the reasons explained, the Court grants defendant's motion to dismiss the complaint and orders each claim for relief thereunder dismissed. Plaintiff will have twenty (20) days within which to file an amended complaint.

IT IS SO ORDERED.