**Pearl Thomas MITCHELL, Plaintiff,**

**v.**

**PERALTA COMMUNITY COLLEGE DISTRICT, a public entity; Amey Stone and Harley White, individually and as Trustees for Peralta Community College District, Defendants.**

**No. C–88–5119 SAW.**

United States District Court, N.D. California.

June 27, 1991.

Elaine W. Wallace, Oakland, Cal., for plaintiff.

Richard Marx, Shawn & Samuels, San Francisco, Cal., Michael Walsh, Fitzgerald, Abbott & Beardsley, Howard Janssen, Crosby, Heafy, Roach & May, Oakland, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

Plaintiff Pearl Thomas Mitchell, a black female, brings this action for sex and race discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, against her former employer, Peralta Community College District ("Peralta"), and for violations of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983, against two members of Peralta's Board of Trustees, Amey Stone and Harley White. Her complaint stems from Peralta's rejection of her application for the position of Director of Grants, Development, and Monitoring for Peralta Community College District ("Director of Grants") in favor of a white male applicant. All defendants renew their motions for summary judgment.[1]

## I.  FACTS

In September 1987, plaintiff was appointed to the interim position of Administrator/Monitor of District Grants at Peralta. Peralta had been experiencing financial troubles, and the interim position was created to monitor Peralta's receipt of grants. Allen Depo., at 11–12. Plaintiff knew that the position was temporary when she accepted it and that she would eventually have to compete with other applicants for a permanent position through the interviewing process. Mitchell Depo., at 61–63.

In March 1988, plaintiff was officially notified by Jeanette Dorsey, the Interim Director of Personnel, that her interim position would terminate at the end of June. Dorsey Decl., ¶ 6. Plaintiff was invited to submit her application for the permanent position, once it was posted. *Id.* Not long afterward, Peralta formally announced the vacancy for the newly created permanent position of Director of Grants. *Id.,* ¶ 7.

In December 1987, the Board of Trustees for Peralta had adopted Board Policy 1.18 as a means of establishing a systematic recruitment and selection procedure to fill the numerous administrative positions then staffed on an interim basis. Dorsey Decl., ¶ 4. Since its approval, approximately twenty-two positions at Peralta have been filled in accordance with Board Policy 1.18.

---

1. In a Minute Order dated February 7, 1991, this Court granted summary judgment to Peralta on plaintiff's Sections 1981 and 1983 claims, but denied the motion as to plaintiff's Title VII claim. The Court further denied defendants White's and Stone's summary judgment motions in their entirety.

*Id.* The Director of Grants position was filled pursuant to the procedures outlined in this policy. *Id.*, ¶¶ 8–9.

As required by policy 1.18, Jeannette Dorsey convened a selection committee consisting of three managers selected by Peralta, three faculty members appointed by the Academic Senate, and one classified representative, selected by the union.[2] *Id.*, ¶ 10; Board Policy 1.18, § I.D.2. Maureen Knightly, one of the management representatives, was chosen to serve as committee chairperson. Dorsey Decl., ¶ 10. The policy did not dictate any particular composition of the committee on the basis of race, ethnicity, or gender, but did specify that the committee be "balanced." Board Policy 1.18, § I.D.2. The committee's purpose was to interview, score, and rank each applicant. According to the policy, the top three candidates were to be presented, unranked, to the Chancellor, Dr. Armen Sarafian, who is now deceased. Board Policy 1.18, § II.C. If the Chancellor found one or more of these candidates to be satisfactory, he would recommend that person to the Board of Trustees for a final vote. *Id.*, §§ III.B. & E.

Again, pursuant to the policy, the committee reviewed the job description and responsibilities listed in the application for the Director of Grants position and devised a uniform set of ten questions to ask each applicant. Dorsey Decl., ¶ 11; Knightly Depo., at 23; Board Policy 1.18, § II.B. The committee also developed a checklist of topics the applicants were expected to discuss in response to each question. Dorsey Decl., ¶ 11; Exh. F to Dorsey Decl. The committee was briefed by Velma Nance (black female), Peralta's Affirmative Action officer, on District policy concerning affirmative action, equal employment opportunities, and interviewing procedures. *Id.*, ¶ 11; Knightly Depo., at 16, 22; Nance Depo., at 38–40. Committee members were expressly instructed not to discuss among themselves the scores and ranks assigned to each applicant and to exercise their own independent judgment in scoring them. Knightly Depo., at 22.

On June 27, 1988, nine of the fifteen applicants for the Director of Grants position were interviewed, including plaintiff. Dorsey Decl., ¶¶ 9, 12. Nance was present at each interview. *Id.*, ¶ 12. For some unknown reason, the sole black member of this committee, Larry Gurley, did not attend the interviews nor participate in the selection process. Each applicant was asked the ten questions prepared by the committee. The committee members then scored and ranked the applicants' responses based on their responses. Knightly Depo., at 39. Ten was the highest score an applicant could receive on any given question, and two the lowest. *Id.* As instructed, the members did not discuss the answers or rankings with each other. *Id.*, at 40.

After concluding all interviews, the names of the three candidates who had received the highest combined scores were submitted to the Chancellor. Dorsey Decl., ¶ 14. Of the nine candidates interviewed, Pearl Mitchell received the lowest overall score. *Id.*, ¶ 16; Exh. I to Dorsey Decl. In fact, there was more than a 200 point difference between plaintiff's score and the highest score, and more than 140 points between plaintiff's and the third highest scores. Exh. I to Dorsey Decl. Chancellor Sarafian interviewed all three finalists and selected Richard Robinson, a white male, as Director of Grants. The Board of Trustees, which included defendants Harley White and Amey Stone, approved his choice. Plaintiff was subsequently reassigned to a faculty position.

The allegations forming the basis of this suit concern both Peralta's rejection of plaintiff for the Director of Grants position and the circumstances surrounding the selection process. Plaintiff avers that defendants rejected her application for Director of Grants because of race and sex discrimination. She claims that shortly before the

**2.** The management representatives were Maureen Knightly (white female), Feliz Elizalde (hispanic male), and Henry Shot (white male). The faculty members were Chris Hadley (white handicapped male), Larry Gurley (black male), and Neil Lucas (white male). The classified member was Mary Logan (hispanic female).

selection process began, Peralta employees circulated malicious, sexist rumors that she was a prostitute, that she was romantically involved with two members of the Board of Trustees, and that she "worked the Board." According to plaintiff, these rumors tainted the selection process. In addition, she claims that defendants Stone and White repeated several of these rumors to the Chancellor, requesting that he conduct an investigation into their validity.

Regarding the selection process itself, plaintiff contends that the committee's composition was suspect and not racially balanced. She also maintains that one member of the selection committee harbored a discriminatory animus toward her. She charges that Stone's and White's actions and omissions tainted the integrity of the selection process and violated her civil rights.

All defendants move for summary judgment. Each contends that plaintiff's evidence is insufficient to create a genuine issue for trial.

## II. DEFENDANT PERALTA'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's sole remaining claim against Peralta is for race and sex discrimination in violation of Title VII. Peralta moves for summary judgment, contending that plaintiff fails to furnish sufficient evidence that Peralta's proffered reasons for rejecting her application were a pretext for illicit discrimination. Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). After a careful examination of the entire record, the Court concludes that plaintiff has failed to make a sufficient showing of pretext to justify proceeding to trial.

In its Order of July 20, 1989, this Court ruled that plaintiff had established a *prima facie* case of race and sex discrimination under Title VII. Once a Title VII plaintiff makes out a *prima facie* case, the burden

of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). If the defendant carries this burden, then the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are a pretext for discrimination. *Id.*

Defendant easily meets its burden of providing a legitimate, nondiscriminatory reason for its refusal to hire plaintiff as Director. Six members of a committee which was convened pursuant to a generally applicable Board Policy anonymously and independently scored the nine interviewees, including plaintiff, for the Director of Grants position, on the basis of ten uniform questions prepared in advance. Plaintiff received the lowest overall score, and thus her name was not submitted to the Chancellor and Board of Trustees for approval. Peralta claims that it rejected plaintiff's application because her score was not among the top three. This is a legitimate, nondiscriminatory reason for its rejection of plaintiff.

The burden now shifts to plaintiff to establish that defendant's professed reason for refusing to hire her is a pretext for unlawful discrimination. To defeat Peralta's summary judgment motion, plaintiff must show that there is a genuine dispute of a material issue of fact regarding defendant's motives in rejecting her application. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983). Although district courts should hesitate before granting motions for summary judgment where intent is at issue, plaintiff must do more than rest on her *prima facie* case and deny the credibility of Peralta's witnesses. She must offer "specific and significantly probative evidence" that Peralta's proffered justification for refusing to hire her is a pretext. *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir.1986); *Steckl*,

703 F.2d at 393 (Title VII plaintiff must produce "specific, substantial evidence of pretext").

As in *Steckl*, plaintiff's evidence of pretext is "wholly empty," consisting of disjointed, anecdotal evidence and unsupported accusations and conjecture. *See Steckl*, 703 F.2d at 393. Indeed, it is difficult even to ascertain on what evidence her charge of unlawful discrimination is based.

First, plaintiff contends that Peralta's justification for refusing to hire her is untenable, given her excellent ratings by her supervisors during her tenure in the interim Administrator position. *See e.g.*, Carter Depo., at 45–46; Allen Depo., at 24–25; Anderson Depo., at 49; Wagner Depo., at 73–74. The deviation between her performance as Administrator and her scores in the selection process is not inherently implausible, given that the scoring was based on applicants' responses to ten prepared questions and not on job performance.

Even if the committee's ultimate selection of finalists was indeed misguided, that alone is insufficient to establish unlawful race or sex discrimination in violation of Title VII. Defendants need not *prove* that the person ultimately selected was *better* qualified than plaintiff. *Burdine*, 450 U.S. at 256–57, 101 S.Ct. at 1095. All Peralta need do is produce evidence of "legitimate nondiscriminatory reasons" for its decision. This it has done. Title VII allows employers the discretion to choose among equally qualified candidates, provided that no unlawful criteria are used. "The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability." *Id.* at 259, 101 S.Ct. at 1096. Plaintiff's high ratings by her supervisors establish only that she was qualified for the position.

Second, plaintiff insists that there were procedural "irregularities" in the selection process, amounting to race and sex discrimination in derogation of Title VII. For example, plaintiff claims that it was improper under Board Policy 1.18 for the committee to proceed without its one black member, Larry Gurley. She further suggests that the resulting absence of blacks on the committee violated the directive of Board Policy 1.18 that the selection committee be "balanced."

These assertions are without merit. The Board Policy requires only a "balanced" committee, not one on which every race and ethnicity is represented. The six committee members who participated in the interviewing process were a diverse group of men and women. While the Board Policy is ambiguous with respect to whether selection can proceed in the absence of a committee member, the Court fails to see how Gurley's absence could have prejudiced plaintiff. Even if Gurley were present and gave plaintiff a perfect score of 100, her combined score would still have been 103 points less than the top finalist's combined score *without* the benefit of a seventh scorer. *See* Exh. I to Dorsey Decl. Her combined score would not have been among the top three. *Id.* Gurley's absence from the committee on the day of interviews remains unexplained. Without some specific evidence adduced by plaintiff to show how his absence from the committee tainted the process such as to constitute unlawful discrimination, the Court refuses to speculate that the process was infirm.[3]

Third, plaintiff claims that the chair of the selection committee, Maureen Knightly Adams, was biased against her because she was a black female. The evidence offered in support of this charge is incompetent to establish this fact. Plaintiff cites to the deposition testimony of defendant White to show that both Knightly and her husband, Jerry Adams, made anonymous telephone calls to White spreading malicious rumors about plaintiff. White's deposition makes absolutely *no* reference to Knightly, but states only that "maybe" Jerry Adams was

---

**3.** The Court further finds plaintiff's implicit assumption that Gurley's absence was engineered by Peralta to be unfounded conjecture, particularly in light of the fact that she has failed to take Gurley's deposition or seek a declaration from him explaining his absence from the committee.

one of the callers. White Depo., at 46. Plaintiff's assertion that White believed Knightly was one of the hostile anonymous callers is flagrantly irresponsible. Moreover, that Knightly's husband *may* have telephoned White is no evidence that Knightly herself was prejudiced against Pearl Mitchell. Finally, if Knightly—who is the *only* committee member charged with bias—was in fact prejudiced against plaintiff, one might expect to see one set of scores for plaintiff which deviated wildly from the rest. Such is not the case here. *See* Exh. J to Dorsey Decl.

Fourth, plaintiff hints that the malicious rumors circulating about her on campus somehow tainted the integrity of the selection process, but there is no evidence in the record that any committee member was even aware of these rumors, let alone that any member lent them credence.[4] The case cited by plaintiff at the hearing, *Jew v. University of Iowa*, 749 F.Supp. 946 (S.D. Iowa 1990), is clearly distinguishable. There the court found that the university's refusal to promote the plaintiff was directly traceable to sexual bias against her by the very faculty members who voted not to recommend her promotion. *Id.* at 960. Several of these faculty members engaged in sexual harassment of the plaintiff and personally participated in spreading invidious sexist rumors about the plaintiff. Here, by contrast, there has been no showing that any of the committee members harassed her, spread rumors about her, or were even aware of such rumors.

Ultimately, plaintiff's case against Peralta is based on disconnected anecdotal facts which it has not explained to her satisfaction. Plaintiff continually insists that de-fendants cannot explain why she scored ninth of nine applicants, why there were problems with the composition of the screening committee and so on. It is apparent that plaintiff has misconceived the allocation of the burden of proof. It is *plaintiff* who bears the burden of persuasion in a Title VII case. *Burdine*, 450 U.S. at 256–57, 101 S.Ct. at 1095. Plaintiff has failed to produce any probative evidence suggesting that defendant's proffered reasons for denying her the position were a pretext for unlawful discrimination.

## III. DEFENDANTS' WHITE'S AND STONE'S MOTIONS FOR SUMMARY JUDGMENT

Plaintiff sues defendants White and Stone for civil rights violations pursuant to 42 U.S.C. §§ 1981 and 1983. They maintain that summary judgment is appropriate because plaintiff has presented no evidence that they have violated her civil rights.[5]

█ Plaintiff moves to strike White's and Stone's motions for summary judgment on the ground that they were not timely served. Defendants served their motions by mail exactly twenty-eight days prior to the original hearing date. Such service complies with Local Rule 220–2. *See also* L.R. 120–4 (time periods specified in Local Rules not subject to Federal Rule of Civil Procedure 6(e), which adds time for service by mail). The Court therefore denies the motion to strike and proceeds to consider the motions for summary judgment.[6]

█ As with Peralta, the Court finds that plaintiff's claims against defendants White and Stone are spurious. She alleges

---

**4.** The Court again observes that with the exception of Knightly, plaintiff has failed to offer deposition testimony or declarations from any of the other committee members.

**5.** Defendants White and Stone also maintain that they are immune from suit in federal court under Sections 1981 and 1983 because they were sued in their "official" rather than "individual" capacities. Their point is not well-taken. The complaint expressly names them in both their individual and official capacities. The mere fact that the suit is based on their alleged actions committed during the course of

their official duties is not cause to conclude that they have been sued solely in their official capacities. *See Price v. Akaka*, 928 F.2d 824, 828 (9th Cir.1990).

**6.** White and Stone move to strike the evidence offered by plaintiff in opposition to their summary judgment motions as improperly authenticated under Local Rule 220–7. Although their request is well-taken, the Court perceives no need to strike the evidence since defendants' motions for summary judgment are justified on the merits.

that these defendants violated her right to petition the government for redress of grievances, her right of free association, and her right to work in her chosen occupation, by means of unlawful discrimination, harassment, and false and defamatory statements, without due process of law. Complaint, ¶ 38. Plaintiff named these particular defendants because of their alleged actions and omissions before, during, and after the selection process.

With respect to the selection process itself, the uncontroverted evidence shows that the *sole* nexus between these trustees and that process is that they voted to approve Richard Robinson, the Chancellor's pick of the three finalists. *See* White Decl.; White Depo., at 94; Stone Depo., at 68–69. The trustees played no role in convening the selection committee and did not speak with committee members during the process. Harley Decl., ¶ 4; Stone Depo., at 68–69. In point of fact, neither trustee even knew who was on the committee until the selection was over. Harley Decl., ¶ 5; Stone Depo., at 68–69. Plaintiff has furnished no evidence to the contrary.

Moreover, Dorsey, who convened the committee, avers that she never discussed the selection of committee members with anyone on the Board of Trustees. Dorsey Decl., ¶ 20. Nor did anyone on the Board discuss plaintiff's candidacy with her. *Id.* Furthermore, when asked during her deposition about the foundation of her allegations against defendant White, plaintiff was unable to name any action he had taken which caused her to be rejected for the Director of Grants position. Mitchell Depo., at 503.

The mere fact that White and Stone voted to approve Robinson, the finalist selected by the Chancellor, is hardly evidence

that they violated any rights of plaintiff. Under Board Policy 1.18, the only candidates upon which the Board is entitled to vote are those recommended to it by the Chancellor. Board Policy 1.18, § III. Chancellor Sarafian, in turn, considered the three finalists submitted to him by the committee, again, pursuant to the policy. Board Policy 1.18, § II.C. Neither the Chancellor nor the Board had the option of selecting Pearl Mitchell or any other nonfinalist for the position. *See* Dorsey Decl., ¶ 18.[7] Thus White's and Stone's vote to approve Robinson had no bearing on plaintiff's rejection. That decision was made by the committee in scoring her.

Nor is it material that the Board of Trustees, including White and Stone, discussed plaintiff's complaints that the selection process was "flawed" with the Chancellor during a closed session of the Board. *See* Dorsey Decl., ¶ 14; Exh. 1 to White Depo. That the Chancellor and trustees considered plaintiff's concerns by examining the selection process to ensure its fairness is not evidence that the process was in fact unfair or that White and Stone violated plaintiff's constitutional rights.[8]

Plaintiff also holds defendants White and Stone accountable for their alleged failure to ensure the fairness of the selection process. Not only is there no evidence that the process was unfair, but the uncontroverted evidence demonstrates that White and Stone were totally uninvolved in that process, save for voting on the Chancellor's recommended candidates. Plaintiff cites no authority for the broad proposition that the Board of Trustees is potentially liable for every decision made at Peralta, regardless of whether such decision falls within its jurisdiction.

---

**7.** If the Chancellor had rejected all three finalists, he could have caused the committee to reconvene to recommend three additional applicants. Board Policy 1.18, § III.C. That option was not presented here since the Chancellor was satisfied with Robinson.

**8.** The nature of Chancellor Sarafian's personal views on the integrity of the selection process is impossible to ascertain with certainty because of his death. Apparently, he had confided in some Peralta officers his concern that there

were some procedural irregularities in the selection process. *See* Wagner Depo., at 103; Anderson Depo., at 28–29, 31–33; Carter Depo., at 36, 41. He presumably resolved these concerns since he recommended that the Board of Trustees approve Robinson. In any event, as discussed above, plaintiff has failed to submit specific and significantly probative evidence that any irregularities were the product of unlawful discrimination.

Finally, plaintiff contends that defendants White and Stone are liable under Sections 1981 and 1983 for reporting to the Chancellor and "demanding an investigation" of the anonymous phone calls they had been receiving about plaintiff.[9] Prior to the commencement of the selection process, both trustees received numerous anonymous calls circulating the various rumors about plaintiff's sexual activities, moral turpitude, and preferential treatment by Peralta officers, as well as a derogatory cartoon strip concerning plaintiff. White Depo., at 45–46; Stone Depo., at 58. Stone admits that each time she received an anonymous call about plaintiff she reported it to the Chancellor. Stone Depo., at 58. White admits he visited the Chancellor in person to report the rumors. White Depo., at 57–58; Exh. 3 to White Depo. While White was present, the Chancellor then called plaintiff in to discuss what White called the "unbelievable rumors." Exh. 3 to White Depo.

Defendants White and Stone cannot be charged with violating plaintiff's rights for merely receiving malicious phone calls about her. Section 1983 creates a cause of action for a person deprived of "rights, privileges, or immunities secured by the Constitution and laws." The most that can be said on these facts is that White and Stone impaired plaintiff's reputation by repeating the rumors. The Supreme Court has held on more than one occasion that reputation by itself is not a protected liberty interest under the fourteenth amendment. *Sigert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Damage to plaintiff's reputation, if any, is not actionable under the Civil Rights Act.

At most, plaintiff states a cause of action for infliction of emotional distress and defamation against White and Stone for repeating the rumors to the Chancellor. This Court declined to exercise its pendent jurisdiction over plaintiff's state law claims for slander and intentional infliction of emotional distress. Order of July 20, 1989. Plaintiff thereafter asserted these claims in state court. As requested by defendant White, the Court takes judicial notice that the First Appellate District of the California Court of Appeal affirmed the trial court's sustaining of defendants' demurrer to these claims. *See Mitchell v. Stone, et al.*, No. A048853 (Cal.App. Dec. 10, 1990). The court held that these tort claims were barred by the workers' compensation laws. *See id.*

Plaintiff maintains that Stone's and White's affirmative conduct and purported failure to insure a fair selection process amounts to a deprivation of due process, which is actionable under Section 1983. It is true that the due process clause contains a substantive component which guards against "arbitrary and capricious governmental action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." *Arroyo Vista Partners v. County of Santa Barbara*, 732 F.Supp. 1046, 1053 (C.D.Cal.1990). To prevail on her Section 1983 claims against White and Stone, plaintiff contends she need only establish that these officials were guilty of "grave unfairness" in the discharge of their legal responsibilities. *See id.* Yet plaintiff fails to provide evidence supporting this threshold requirement.

After a careful examination of the record, therefore, it is clear that plaintiff has failed to provide any evidence which could arguably sustain her claims against Peralta, White, and Stone. Although courts must be cautious in granting summary judgment when motivation and intent are at issue because of the "elusive factual question" of intentional discrimination, *Perez v. Curcio*, 841 F.2d 255, 258 (9th Cir.1988); *Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir.1987), such relief is nevertheless appropriate where evidence of

9. She also contends in her statement of controverted and uncontroverted facts that White and Stone failed to investigate a letter from Paul Cobb. Statement, ¶ 19. The Court cannot evaluate the significance, if any, of this failure because the allegation lacks foundation. Plaintiff's opposition papers fail both to identify Paul Cobb and to delineate the relevant portions and importance of his letter. Nor do the cited deposition excerpts allude to this letter.

unlawful conduct is totally lacking. *See Foster v. Arcata Assocs., Inc.,* 772 F.2d 1453, 1459 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986).

Accordingly,

IT IS HEREBY ORDERED that:

(1) Plaintiff's motion to strike defendants White's and Stone's motions for summary judgment is DENIED; and

(2) Defendants Peralta's, Harley White's, and Amey Stone's motions for summary judgment are GRANTED.