John BADEA, Plaintiff–Appellant,

v.

Harvey COX, et al., Defendants–Appellees.

No. 89–55638.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 5, 1990.

Decided April 25, 1991.

John Badea, in pro per.

Frederick M. Brosio, Jr., and Katherine M. Lunsford, Asst. U.S. Attys., Los Angeles, Cal., for defendants-appellees.

Before PREGERSON, REINHARDT and HALL, Circuit Judges.

REINHARDT, Circuit Judge:

Badea, a former inmate of the Federal Prison Camp at Lompoc, California, brought a civil rights action against the warden and two prison officials for their denial of his repeated requests for placement in a community treatment center.[1] His complaint sought declaratory and injunctive relief, and compensatory and punitive damages. The district court referred Badea's case to a magistrate, who concluded that Badea could properly raise his claims only through a habeas corpus proceeding and not through a civil rights action. The magistrate recommended dismissing the action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. The district court adopted the magistrate's findings, conclusions, and recommendations, and dismissed the case.

Badea raises several claims of error. He argues first that the district court erred in refusing to transfer his case to another judge who had recently presided over a similar case. He then argues that the district court inadequately considered his objections to the magistrate's report and erred in failing to provide him with a statement of his complaint's deficiencies before dismissing the case. Next he appeals the district court's conclusion that his proper avenue of relief was through habeas corpus. Finally, he argues that the facts are sufficient to state a claim upon which relief may be granted. We reverse because, regardless whether Badea initially should have filed a habeas petition rather than a civil rights action, his subsequent parole from prison makes his pursuit of a civil rights action proper.

I.

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the "legality or duration" of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973). A civil rights action, in contrast, is the proper method of challenging "conditions of ... confinement." *Id.* at 498–99, 93 S.Ct. at 1840–41. The parties dispute whether a transfer to a community treatment center would have constituted a change in *length* of confinement or *conditions* of confinement, and therefore whether Badea should have sought relief through a habeas petition or a civil rights complaint. *See Braun v. Scott*, 927 F.2d 1516 (9th Cir.1991) (ordering rehearing en banc); *Brown v. Rison*, 895 F.2d 533, 536 (9th Cir.1990). Because of the passage of time, we need not resolve that issue.

Prior to the time that his appeal was heard, Badea was released on parole. Accordingly, he no longer seeks a transfer to a community treatment center. Any request for relief relating to an actual change in the duration or conditions of his confinement is now moot, and the claims that remain are properly asserted in a civil rights suit. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Were we to affirm the district court, Badea would be unable to file a habeas petition to obtain the relief he is now seeking—monetary damages. Accordingly, we reverse and remand for the

---

1. Badea alleged that the appellees violated his Fifth Amendment rights to due process and equal protection of the laws, as well as his right under 28 C.F.R. § 551.90 not to be discriminated against because of national origin.

district court to consider the merits of Badea's civil rights claim.[2]

## II.

■ Badea argues that the district court should have transferred his case to another judge who had heard a factually similar case involving different parties. This argument is without basis in the law. District court judges have "broad discretion" regarding the assignment or reassignment of cases. *See United States v. Gray*, 876 F.2d 1411, 1414 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990); *United States v. DeLuca*, 692 F.2d 1277, 1281 (9th Cir.1982). "We do not review independently a district court's determination of the scope and application of local rules and general orders because we give district courts broad discretion in interpreting, applying, and determining the requirements of their own local rules and general orders." *Gray*, 876 F.2d at 1414. This case is therefore remanded to the same district judge for further proceedings.

## REVERSED AND REMANDED

HALL, Circuit Judge, concurring and dissenting.

Plaintiff's complaint was dismissed below for failure to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). Although I agree with the majority that any habeas claim possessed by Badea is now moot, I do not agree that this case should be remanded, and I accordingly dissent.

We clearly have the power to affirm, despite defective reasoning below, so long as the record is sufficient to sustain an alternative ground for the decision. *See Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937); *Golden Nugget v. American Stock Exchange*, 828 F.2d 586, 590 (9th Cir.1987); *Charley's Taxi Radio Dispatch v. Sida of Hawaii, Inc.*, 810 F.2d 869, 874 (9th Cir.1987); *Seattle Times Co. v. Seattle Mailer's Union No. 32*, 664 F.2d 1366 (9th Cir.1982).

In the instant case the record is sufficient to decide whether dismissal on the prison officials' 12(b)(6) motion was appropriate. Since a 12(b)(6) motion is decided on the *pleadings*, we have before us all that the district court had before it, and all that the district court will have before it when the next 12(b)(6) motion is made.

Moreover, remanding plaintiff's case to force the district court to again consider whether plaintiff has stated a claim will accomplish nothing. Plaintiff alleges three bases for relief: that he was denied due process of law, that he was denied equal protection, and that prison officials violated regulations proscribing discrimination based on race or ethnicity. Plaintiff can not succeed on any of these three claims even if his allegations prove true.

Plaintiff claims that his Fifth Amendment right to due process has been violated, but he alleges no facts that would support this claim.[1] Plaintiff does allege that

2. Our dissenting colleague would affirm the district court on the ground that the merits of Badea's case cannot survive a motion to dismiss pursuant to Rule 12(b)(6). As she recognizes, the district court never considered the merits of this issue. Nevertheless, the dissent would have us rule on the validity of Badea's constitutional and regulatory claims as an exercise of our power to affirm the district court on any ground supported by the record.

   Although it is clear that we have the power to affirm on an alternate basis, we need not do so and "as a prudential matter" can properly remand to the district court. *See Golden Nugget, Inc. v. American Stock Exchange, Inc.*, 828 F.2d 586, 590 (9th Cir.1987). While the issue on which our colleague would have us decide the case is purely one of law, the government has not yet briefed the question and has requested

that the issue not be decided until it has had an opportunity to do so. In this case, we see no reason to decide *ab initio* issues that the district court has not had an opportunity to consider and that present questions of first impression in our circuit. There may well be valid reasons for our considering issues initially on appeal in other cases but none has been suggested here. Accordingly, we remand for the purpose of allowing the district court to address the merits in the first instance.

1. Because this is a 12(b)(6) motion, qualified immunity cannot be considered. Qualified immunity is a defense, see *Merriman v. Walton*, 856 F.2d 1333 (9th Cir.1988), and 12(b)(6) tests the adequacy of the plaintiff's pleadings. F.R. Civ.P. 12(b)(6).

only minimal procedures were used in deciding not to admit him to the Community Treatment Center. However, the validity of these procedures is beyond our reach. For before this or any court can address a due process claim, the court must first find that a "liberty" or "property" interest of the plaintiff has been affected. *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir.1990); *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir.1986), *cert. den.* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987).

Plaintiff has implicitly asserted that his liberty interest was slighted by the prison officials' refusal to transfer him to a less restrictive environment. Yet it is clear under controlling authority that plaintiff's desire for a less-restrictive environment within the correction system is not a cognizable liberty interest. There are two possible sources from which a liberty interest can arise; the Constitution itself and applicable law. *Olim*, 461 U.S. at 247–51, 103 S.Ct. at 1746–48; *Hewitt*, 459 U.S. at 468–471, 103 S.Ct. at 869–71; *Toussaint*, 801 F.2d at 1089. The Supreme Court directly addressed the question whether the transfer of a prisoner to a more restrictive environment impinges on a constitutionally created liberty interest in *Hewitt*. The Court held that such a transfer does not impinge on a liberty interest, even if the transfer imposes "severe hardships" on the prisoner. *Hewitt*, 459 U.S. at 467 & n. 7, 103 S.Ct. at 869 & n. 7; *see also Toussaint*, 801 F.2d at 1092. The defendants' *disinclination* to transfer appellant to a *less restrictive* environment thus cannot be said to affect a constitutional "liberty" interest.

The plaintiff might also have a liberty interest growing out of applicable statutes and regulations. *See Hewitt*, 459 U.S. at 469–471, 103 S.Ct. at 870–71. The question is whether these statutes and regulations do more than merely channel administrative discretion; they must be "explicitly mandatory." *Id.* at 472, 103 S.Ct. at 871. In other words, "the ... law must direct that a given action will be taken or avoided only on the existence or nonexistence of specified substantive predicates." *Toussaint*, 801 F.2d at 1094.

The statute and regulations at issue in this case are not explicitly mandatory. The statute provides:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community.

18 U.S.C. § 3624(c).

Although the statute uses the word "shall," it also uses the vague terms "to the extent practicable," and "conditions that will afford the prisoner a reasonable opportunity." Thus, the statute is considerably less than an explicit mandate that prisoners like the plaintiff be assigned to Community Treatment Centers. As this court has said before, "the word 'shall' alone is not sufficient. Rather, the liberty interest is created when the word 'shall' is used to mandate certain procedures...." *Toussaint*, 801 F.2d at 1098 (finding that procedures were mandated so that a liberty interest was created). Section 3624(c) refers to no procedures. It is instead a broadly worded statute setting forth a general policy to guide the prison system.

Moreover, the courts look to regulations as well as statutes in considering whether applicable law provides a prisoner with a "liberty" interest. *See Toussaint*, 801 F.2d at 1097–1098. The prison regulations in issue do not support the existence of a liberty interest. For these regulations provide that prisoners like the plaintiff, prisoners who have state sentences lodged as detainers, are not ordinarily eligible for reassignment to Community Treatment Centers.

Plaintiff also asserts that he has been denied equal protection under the equal protection component of Fifth Amendment

due process. *See Adams v. Howerton,* 673 F.2d 1036, 1041 & n. 3 (9th Cir.) (the Fourteenth Amendment does not apply to the federal government, but the Fifth Amendment contains an equal protection component), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982). Plaintiff argues that the defendants violated his equal protection rights by administering prison regulations inequitably.

Although no Ninth Circuit appellate precedent appears to be directly on point, other circuits and the central district have addressed the precise issue of inequitable administration. Two different standards have been used by these other courts; plaintiff has satisfied neither.

The less-restrictive standard was articulated by the Second Circuit in *Brady v. Town of Colchester,* 863 F.2d 205, 216 (2d Cir.1988). In *Brady,* the court held that a plaintiff must charge an allegedly inequitable official not only with deliberately interpreting a statute against him, but also with singling him out for that interpretation. The *Brady* court found evidence sufficient to preclude summary judgment against plaintiff under this standard.

In *Arroyo Vista Partners v. County of Santa Barbara,* 732 F.Supp. 1046 (C.D.Cal. 1990) the district court relied on *Brady,* but actually applied a more stringent test. The court held that an equal protection plaintiff must do more than charge that the government has singled him out for undesirable treatment. The plaintiff must allege that he has been singled out on an impermissible basis.

The Seventh Circuit has adopted a restrictive approach that seems equivalent to the standard used by the district court in *Arroyo Vista Partners.* In *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1481–82 (7th Cir. 1990), the Seventh Circuit affirmed a grant of summary judgment on an equal protection claim. The court reasoned that allegations of "[d]iscrimination based merely on individual, rather than group, reasons will not suffice" for an equal protection claim. Since the *New Burnham* plaintiff had not alleged any group discrimination, he failed to state an equal protection claim.

Under either the *Brady* or *New Burnham* approaches, plaintiff's equal protection claim fails. Plaintiff has given no indication, if he was "singled out," that defendants' decision was based on group discrimination. Moreover, plaintiff has given no indication that he was "singled out." Rather, the defendants are alleged to have treated plaintiff in accord with general practice.[2]

Plaintiff also contends that defendants have violated a prison regulation. This regulation provides: "Inmates may not be discriminated against on the basis of race, religion, nationality, sex, handicap, or political belief." 28 C.F.R. § 551.90. Plaintiff has not alleged, for example, that a disproportionate number of Caucasian inmates have been transferred to Community Treatment Centers while other ethnic groups have fared less well. Such a course of administration would be prohibited by section 551.90. Instead, plaintiff has alleged that he has been treated in accord with the general rule. Since plaintiff has not alleged that he has been singled out, and has not alleged any broad-based differential treatment, he has not stated a claim that defendants violated section 551.90. To hold otherwise would be to rule that if a single Caucasian inmate serving a concurrent state sentence is transferred to a Community Treatment Center, every similarly

---

2. Under more general equal protection principles plaintiff also fails to state an equal protection claim. For "the decisionmaker [must] select[ ] or reaffirm[ ] a particular [facially neutral] course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Admin-*

*istrator v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979); *see also Stop H–3 Assoc. v. Dole,* 870 F.2d 1419, 1431 (9th Cir.1989). Plaintiff has not even alleged that a course of action has been undertaken that has an adverse effect on an identifiable group,

situated inmate of a different ethnicity must be transferred as well.[3]

I would affirm the district court.

much less that a course of action has been undertaken *because of* its adverse effect.

3. This discussion of plaintiff's section 551.90 claim in no way implies a conclusion that section 551.90 creates a private right of action. Whether there can ever be a right of action under section 551.90 need not be addressed in this dissent. For even if there is such a private right of action, a point that is far from evident, plaintiff has not stated a claim.