**Sabil M. MUJAHID, aka Terry Smith, Plaintiff,**

v.

**George SUMNER, et al., Defendants.**

**Civ. No. 92–00060 DAE.**

United States District Court,
D. Hawaii.

Nov. 12, 1992.

Sabil M. Mujahid, pro se.

Warren Price, III, Atty. Gen., HI, Thomas D. Farrell, Atty. Gen. Office, Honolulu, HI, for defendants.

## ORDER ON APPEAL FROM REPORT AND RECOMMENDATION

DAVID ALAN EZRA, District Judge.

### BACKGROUND

Sabil Mujahid brings this appeal from the report and recommendation of Magistrate Judge Yamashita lodged September 18, 1992 recommending that summary judgment be entered in favor of the defendants. Additionally, plaintiff appeals from Magistrate Yamashita's denial of plaintiff's motion to strike defendants' pleading and to sanction counsel, and denial of plaintiff's motion for preliminary injunction.[1]

Plaintiff, a prisoner at the Halawa Correctional Facility filed this suit under 42 U.S.C. § 1983 against George Sumner, Director of the Department of Public Safety, and John Smythe, Administrator at Halawa Medium Security Facility, in their individual and official capacities. Plaintiff alleges that subsections (g)(4) and (i) of Title 17–203–11 of the Hawaii Administrative Rules are constitutionally infirm. They provide:

(g)(4) No press shall be included in the personal correspondence and visitor list and be granted "visitor" status and privileges unless the press member has had a bona fide friendship with the inmate or ward that was established prior to commitment. In such instances, personal visits shall not be made for the purpose of securing news information. The press member should be viewed as entering the facility in the official capacity as a media member and thus the visit should be classified as an "official" press visit. The press member entering for personal reasons shall visit on weekends and holidays, whereas press member[s] entering for official visits can be scheduled on weekdays.

(i) Inmates and wards may correspond with a member of the news media provided the inmate or ward has a bona fide friendship with the person that was established prior to commitment.

The court finds that Hawaii Administrative Rule 17–203–11(g)(4), restricting correspondence and visitation among inmates and members of the media, and Rule 17–203–11(i), barring outgoing inmate correspondence with specific members of the news media, are unconstitutional as written.[2] Accordingly, the court enters sum-

---

1. Plaintiff additionally moved on September 24, 1992 to admit two additional exhibits into the record. Those exhibits, an excerpt from the Hawaii Department of Corrections policy manual and an excerpt from the Halawa Correctional Facility policy manual, are deemed admitted and have been considered by the court in reaching its decision.

2. Department of Corrections Policy 493.15.02[9] and Halawa Correctional Facility Policy 2.15.-02[5] allow a plaintiff to send letters to mem-

mary judgment in favor of plaintiff on his claims for declaratory and injunctive relief. Any claims for damages against defendants, however, are barred by the defenses of absolute and qualified immunity. The court enters summary judgment in favor of defendants on plaintiff's claims for damages against defendants in their official and individual capacities.

Additionally, the court finds that the magistrate properly denied plaintiff's motion to strike defendants' pleadings and to sanction counsel, and denies as moot plaintiff's motion for preliminary injunction.

### STANDARD OF REVIEW

Under Fed.R.Civ.P. 72(a) and Local Rule 404-1, the district court reviews the non-dispositive rulings of a magistrate judge under a clearly erroneous standard and makes a *de novo* determination of the merits of any dispositive rulings.

Accordingly, the magistrate's denial of plaintiff's motion to strike defendants' pleadings and to sanction counsel is reviewed for clear error. The magistrate's report and recommendation that summary judgment be entered in favor of defendants on all claims is reviewed *de novo*.

### DISCUSSION

**A. *Plaintiff's Motion to Strike Defendants' Pleading***

The magistrate judge properly denied plaintiff's motion to strike several elements of defendants' pleadings. Specifically, Mujahid objects to defendants' characterization of certain elements of the Supreme Court's holding in *Pell v. Procunier,* and certain other factual characterizations made by the defendants.

Fed.R.Civ.P. 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." None of the factual characterizations or legal arguments made by defendants are redundant, immaterial, impertinent, or

scandalous. Accordingly, the magistrate properly denied plaintiff's motion.

**B. *Cross–Motions for Summary Judgment***

1. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> . . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the nonmoving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *but cf., id.,* 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argu-

---

bers of the news media provided that those letters are addressed generally and not to a specific individual. Thus, the overall effect of Rules 17–203–11(g)(4) and (i) is to preclude

outgoing communication by inmates with a specific member of the media unless there existed a prior friendship.

ment are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Products v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the nonmoving party. *Id.*

The magistrate judge concluded that summary judgment was appropriate with respect to both administrative rules at issue here.

2. Hawaii Administrative Rules 17–203–11(g)(4) and (i)

■ Prison officials are awarded considerable deference in maintaining the internal affairs of the prisons they manage. Such deference is awarded because "the judiciary is 'ill-equipped' to deal with the difficult and delicate problems of prison management." *Thornburgh v. Abbott,* 490 U.S. 401, 407–408, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989) (quoting *Procunier v. Martinez,* 416 U.S. 396, 404–405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974)).

■ As a general proposition, regulations that impinge upon the constitutional rights of inmates are reviewed for a reasonable relationship to a legitimate penological interest. *See, e.g., Turner v. Safely,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The law is somewhat unsettled, however, with respect to regulations that concern outgoing correspondence by inmates to noninmates.

The persisting question is whether *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), establishes a heightened standard for review of personal correspondence between inmates and noninmates. In that case, the Supreme Court's first significant decision regarding First Amendment rights in the prison context, the court reviewed regulations concerning personal correspondence between inmates and noninmates under the following heightened standard:

First, the regulation or practice in question must further an important or substantial government interest unrelated to the suppression of expression. Prison officials ... must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. *Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad. Id.* at 413–414, 94 S.Ct. at 1811 (emphasis added).

Cases subsequent to *Procunier,* however, have uniformly reviewed prison regulations for a reasonable relation to a legitimate penological interest. *See Pell v. Pro-*

*cunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In *Turner v. Safely,* the Court announced:

> If *Pell, Jones,* and *Bell* have not already resolved the question posed in *Martinez,* we resolve it now: when a prison regulation impinges upon inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261.

In *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), the Court explained that the analysis employed in *Martinez,* was primarily a recognition that "the implication of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials." *Thornburgh,* 490 U.S. at 413, 109 S.Ct. at 1881. The Court noted:

> ... A careful reading of *Martinez* suggests that our rejection of the regulation at issue resulted not from a least restrictive means requirement, but from our recognition that the regulated activity centrally at issue in that case—outgoing personal correspondence from prisoners—did not, by its very nature, pose a serious threat to prison order and security. *Thornburgh,* 490 U.S. at 411, 109 S.Ct. at 1880.

Because *Martinez* has not been explicitly overruled, the court applies the two-part test outlined in *Martinez.* It does so, however, with the understanding that the *Martinez* test is not an entirely different standard, but rather an application of the general requirement of reasonableness to the particular context of outgoing correspondence; a context in which, relative to others, the impact upon prison security is peculiarly minimal.

As a starting point for analysis, the court notes that defendant has offered no evidence whatsoever of the reasonableness of 17–203–11(g)(4) and (i). In their memorandum in support of summary judgment, defendants state,

In *Pell,* it will be recalled, a prior policy allowing inmates to be news media sources was found to have directly contributed to an escape attempt at San Quentin in which three staff members and two inmates were killed. This was viewed by officials as the climax of a mounting disciplinary problem caused, in part, by its liberal posture with regard to press interviews. Is Halawa Correctional Facility prohibited from learning from San Quentin's lessons? Must [it] wait until it has its own escape attempt, riot, or other similar disaster so that it can prove to the court's satisfaction that the adoption of such a policy [as is at issue here] is a legitimate security response? Or is it enough to note that it is well-established in the caselaw [sic] that such a problem has occurred at other prisons as a result of allowing inmates to become news media sources, and that because the Supreme Court has upheld the right of prison officials to restrict the First Amendment rights of inmates in order to deal with this problem, other prisons may adopt the same regulations? Defendants submit the latter is the case. *Defendants' Memorandum in Opposition to Plaintiff's Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Preliminary Injunction,* 3.

In fact, neither is the case. Prison officials may of course take preventive measures to avert disasters. When those measures are challenged, however, prison officials must place *in the record* evidence of the basis of their determination that the measure was reasonably related to a penological objective.

In a motion for summary judgment, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *British Airways Bd.,* 585 F.2d at 952.

The presence of direct evidence in the record is especially important in cases challenging prison restrictions. In *Caldwell v. Miller,* 790 F.2d 589 (7th Cir.1986), the Seventh Circuit noted:

Challenges to prison restrictions that are alleged to inhibit the First Amendment rights of inmates must be analyzed in terms of the legitimate policies and goals of the corrections system. It is critically important then that the record reveal the manner in which security considerations are implicated by the prohibited activity. This is not to say that an issue such as that before us now can never be decided on summary judgment. Rather, the governmental interest asserted in support of a restrictive policy must be sufficiently articulated to allow for meaningful review of the regulation in question and its effect on the inmate's asserted rights. *Id.* at 597–598 (citations omitted).

*See also Swift v. Lewis*, 901 F.2d 730, 732 (9th Cir.1990) ("Prison officials must at least produce some evidence that their policies are based on legitimate penological justifications."). Summary judgment is appropriate in the absence of such evidence.

Even were the court to accept defendants' legal arguments as evidence, the court finds unpersuasive defendants' claim that the penological interest at stake here is identical to that in *Pell.* In *Pell,* the Court noted that it was "the entry of people into the prisons for face-to-face communications with inmates" that presented special security and administrative problems. *Pell,* 417 U.S. at 827, 94 S.Ct. at 2806. Such interests are not at stake here.

■ The Court recognized in *Pell* that prison security may be compromised by allowing inmates to become media news sources,

Extensive press attention to an inmate who espoused a practice of non-cooperation with prison regulations encouraged other inmates to follow suit, thus eroding the institution's ability to deal effectively with inmates generally. *Id.* at 832, 94 S.Ct. at 2809.

But even had defendants offered evidence in the record that this was their objective, 17–203–11(g)(4) and (i) are vastly overbroad for accomplishing that goal. Regulations 17–203–11(g)(4) and (i) are not limited to ongoing correspondence with members of the news media. Nor are they selective, as was the case in *Pell,* so as to disallow only certain inmates from contacting members of the news media. Rather these regulations act to categorically prohibit a class of communications, many of which the prison has no legitimate penological interest in prohibiting.

■ In examining the facial validity of a challenged prison regulation, the court looks to several factors. Aside from the rational connection between the regulation and the asserted penological interest, the court also considers whether there are alternative means of exercising the right that remain open to prison inmates, the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally, and the absence of ready alternatives as evidence of the reasonableness of the regulation. *Turner,* 482 U.S. at 89, 107 S.Ct. at 2262.

Regulations 17–203–11(g)(4) and (i) fail these tests as well. One of the factors relied upon by the Supreme Court in upholding a prison regulation prohibiting face-to-face interviews of inmates by members of the media in *Pell,* was the availability of the mail as an alternative means of communication. The Court wrote,

... We regard the available "alternative means of [communication as] a relevant factor" in a case such as this where "we [are] called upon to balance First Amendment rights against [legitimate] governmental ... interests."

One such alternative available to California prison inmates is communication by mail. Although prison regulations, until recently, called for the censorship of statements, *inter alia,* that "unduly complain" or "magnify grievances," that express "inflammatory political, racial, religious or other views," or that were deemed "defamatory" or "otherwise inappropriate," we recently held that "the Department's regulations authorized censorship of prisoner mail far broader than any legitimate interest of penal administration demands," and accordingly affirmed a district court judgment invalidating the regulations. In addition, we

held that "[t]he interests of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." Accordingly, we concluded that any "decision to censor or withhold delivery of a particular letter must be accompanied by minimal procedural safeguards." Thus, it is clear that the medium of written correspondence affords inmates an open and substantially unimpeded channel for communication with persons outside the prison, including representatives of the news media. *Pell*, 417 U.S. at 824, 94 S.Ct. at 2805 (citations omitted).

The regulations at issue here substantially impede the availability of the mail as an alternative channel for communication.

With regard to the third factor, the court finds it unlikely that, even had defendants offered evidence of the penological basis of the regulations at issue, that accommodation of the asserted constitutional right would have any significant impact upon the allocation of prison resources. Similarly, the court finds it unlikely that defendants could demonstrate the absence of alternatives for accomplishing the goal of maintaining prison security.

Accordingly, summary judgment in favor of the plaintiff is appropriate with respect to his claim that Hawaii Administrative Rules 17–203–11(g)(4) and (i) are unconstitutional.[3]

### 3. Plaintiff's Equal Protection Claim

■ Mujahid alleges that his equal protection rights under the Fourteenth Amendment were violated because other inmates were allowed to write to members of the news media while he was not allowed the opportunity to do so.

The Ninth Circuit's recent ruling in *Badea v. Cox*, 931 F.2d 573 (1991) precludes plaintiff's claim. In *Badea*, the Ninth Cir-

cuit held that in order to maintain an equal protection claim, a plaintiff must show that he was singled out for undesirable treatment *on an impermissible basis*. Thus, " '[d]iscrimination based merely on individual, rather than group, reasons will not suffice' for an equal protection claim." *Badea*, 931 F.2d at 577 (quoting *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481–82 (7th Cir.1990)).

"A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Id.* at 1481.

Moreover, Mujahid has failed to establish that the administrative rules were inequitably administered against him. Plaintiff has offered evidence that other inmates have been allowed to write letters to the editor of local newspapers. Administrative Rule 17–203–11(g)(4) as written does not prohibit inmates from making general communications with the media, such as letters to the editor. Rather it acts solely to prohibit communications with specific members of the media. Plaintiff has not shown any evidence that other inmates were allowed to engage in such specific correspondence.

Accordingly, summary judgment in favor of defendants is appropriate on plaintiff's equal protection claims.

### 4. Absolute Immunity

■ Plaintiff's claim for damages against the defendants in their official capacity is barred by the Eleventh Amendment. The Eleventh Amendment bars a suit against state officials in their official capacity if the state is the real party in interest. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). *See also, Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir.1984). Accordingly,

---

**3.** The court need not reach the merits of those provisions of Rule 17–203–11(g)(4) that restrict visitation rights by members of the press, a matter in which Halawa may have a legitimate penological interest. Because the regulation, taken as a whole, impermissibly restricts personal correspondence by inmates it cannot withstand constitutional muster.

summary judgment in favor of defendants is appropriate on plaintiff's claim for damages against defendants acting in their official capacity.

### 5. Qualified Immunity

▮ Defendants correctly contend that they are protected from liability in their individual capacities by qualified immunity.

Defendants' claim of qualified immunity presents the legal question of whether a public official is entitled not to be forced to stand trial for actions taken in her official capacity. *Mitchell v. Forsyth,* 472 U.S. 511, 528 n. 9, 530, 105 S.Ct. 2806, 2816 n. 9, 2817, 86 L.Ed.2d 411.

Public officials are entitled to qualified immunity from damages for any conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This protection is quite broad. Under the *Harlow* test, a public official is only not entitled to qualified immunity if the right violated is clearly established.

The policy rationale behind this test is two-fold. First, as an element of fairness, public officials can only be expected to conform their behavior to standards that are well defined. In *Todd v. United States,* 849 F.2d 365, 368 (9th Cir.1988), the Ninth Circuit said:

> If the controlling law is not clearly established, a reasonable person would not be expected to know how to structure his conduct in order to avoid liability. *Id.* at 368–69.

Second, the public interest is served having officials who are able to take affirmative action without persistent fear of suit. Qualified immunity acts as a means to avoid deterring capable persons from accepting public office and encouraging action on pressing social issues. *Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736.

The prison officials in the instant case did not violate the clearly established rights of the plaintiff. The unconstitutionality of Administrative Rules 17–203–11(g)(4) and (i) could not have been plainly apparent to the enforcing officials. The

decisions of the Supreme Court subsequent to its holding in *Martinez* left considerable uncertainty about the precise contours of the permissible bounds of regulation of outgoing inmate correspondence by prison officials.

Moreover, the instant case present a distinct issue from that considered in *Martinez.* There, the challenge to the regulation was based on its lack of content neutrality. The instant case presents the questions of what breadth a content neutral restriction on outgoing inmate correspondence may take, and what justifications prison officials must offer for regulations they seek to uphold.

The magistrate judge properly found that defendants are entitled to the defense of qualified immunity. Accordingly, summary judgment in favor of defendants on plaintiff's claim for damages against defendants for actions taken in their individual capacities is appropriate.

### C. *Plaintiff's Motion for Preliminary Injunction*

Plaintiff's motion for preliminary injunction is rendered moot by the court's decision on the merits of each of his claims.

### D. *Plaintiff's Motion to Sanction Counsel*

Plaintiff's motion to sanction counsel is entirely without merit and is therefore denied.

### CONCLUSION

For the reasons stated above, the court AFFIRMS the rulings of the magistrate judge denying plaintiff's motion to strike pleadings and to sanction counsel.

The court ADOPTS the report and recommendation of the magistrate judge with respect to its conclusion that summary judgment be granted in favor of defendants on plaintiff's claims for damages against defendants for actions in their official and individual capacities.

The court MODIFIES the report and recommendation of the magistrate judge with respect to its conclusion that summary

judgment be granted in favor of defendants as to the constitutionality of Hawaii Administrative Rules 17–203–11(g)(4) and (i). The court grants plaintiff summary judgment on its claim that Hawaii Administrative Rules 17–203–11(g)(4) and (i) are unconstitutional and enjoins the Halawa facility from enforcing said regulations.

The court DENIES plaintiff's motion for preliminary injunction as moot.

IT IS SO ORDERED.