Kenneth N. THOMPSON, and Shakur
Abdullah, Plaintiffs,

v.

Harold W. CLARKE, Frank X. Hopkins,
and Mike Kenney, Defendants.

No. 4:CV93–3062.

United States District Court,
D. Nebraska.

April 14, 1994.

Gregory M. Gorski, John E. Higgins, Kutak Rock Law Firm, Omaha, NE, for plaintiffs.

Terri Weeks, Asst. Atty. Gen., Lincoln, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

I have before me the motion for summary judgment (Filing 31) submitted by defendants Harold W. Clarke (Clarke), Frank X. Hopkins (Hopkins), and Mike Kenney (Kenney). Their motion has been limited by United States Magistrate Judge David L. Piester, (Filing 36), to consideration of the issue of qualified immunity. I have carefully considered the exhibits submitted in support of the motion (Filing 32), as well as the exhibits submitted in opposition (Filing 38).

The issue presented to the court in the defendants' motion for summary judgment is whether the refusal of prison officials to allow the use of prison facilities for the production of taped programs for broadcast on the public-access channel of the local cable television system for the purpose of promoting a

particular religious belief violated the plaintiff prisoners' "clearly established" constitutional rights such that the prison officials are not protected by qualified immunity from an award of damages in a 42 U.S.C. § 1983 action. Finding that the contours of the alleged right to utilize prison facilities to produce a television program for the express purpose of promoting a particular religious point of view were not "sufficiently clear that a reasonable official would understand" that by denying such access the prison official violated the constitutional rights of a prisoner, I shall grant the motion for summary judgment on the issue of qualified immunity. *See, e.g., Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

## I.

The material undisputed facts of this case are as follows:

1. · Plaintiffs Kenneth N. Thompson (Thompson) and Shakur Abdullah (Abdullah) are inmates at the Nebraska State Penitentiary (NSP).

2. Thompson and Abdullah are both adherents of Al–Islam.

3. For purposes of the motion for summary judgment, I assume that Thompson and Abdullah sincerely hold the religious beliefs articulated in their various affidavits.

4. The tenets of Al–Islam encourage its adherents to propagate the faith, proselytize to nonbelievers, and generally engage in activities intended to benefit others.

5. For the purpose of promoting these tenets, the plaintiffs wished to produce a program for broadcast on the public-access channel of the local cable television system.

6. For purposes of the motion for summary judgment, I assume that unless the plaintiffs are able to produce the suggested program, they cannot propagate their faith, proselytize to nonbelievers, or generally engage in activities intended to benefit others *solely* with respect to viewers of the public-access channel.

7. During June and July, 1992, Abdullah sent a letter to the public-access coordinator for the local cable television system regarding his and Thompson's interest in broadcasting programs produced within NSP.

8. The public-access coordinator responded by sending Abdullah a letter addressing Abdullah's questions and enclosing two blank applications for time, together with a copy of the Rules Governing the Access Channel.

9. The public-access coordinator also indicated that Abdullah could start to run the program within thirty days of receipt of the tape and the application for channel time.

10. On July 18, 1992, Thompson and Abdullah sent Hopkins, the warden at NSP, an interview request form, a video proposal, a copy of the letter from the public-access coordinator, a blank application for channel time, and a copy of the cable access rules.

11. Thompson and Abdullah asked to use the video equipment located in NSP's chapel, including a camera, VCR, monitor and lights.

12. Thompson and Abdullah requested to use this equipment for 1½ hours on the fourth Sunday of each month during the time they would be in the chapel area for Muslim services conducted by Alim Abdullah (the Muslim clergyman) for the purpose of taping video programs to be aired on the public-access channel of the local cable television system.

13. On or about July 28, 1992, Hopkins sent the plaintiffs' proposal back to Thompson, denying the request.

14. Hopkins stated the plaintiffs had made no "mention of the content of the produced tapes"; that "it would be impossible to schedule time and equipment for every group making a similar request"; that "Alim Abdullah's presence in the Chapels during filming does not necessarily mean he is supervising this project, nor would I recommend his time be spent in that way"; and that "similar requests have been denied in the past based upon above reasons."

15. On August 1, 1992, Thompson responded to Hopkins' July 28, 1992, denial of the first proposal by submitting a second interview request proposal to Hopkins, de-

scribing in greater detail the nature of the proposal.

16. The second proposal noted that Abdullah was Thompson's "co-companion on generating the proposal."

17. Thompson pointed out in the second proposal that the proposed video taping would be a "Muslim project"; that Alim Abdullah would supervise the project in the same way any other activity within NSP was supervised; and that Thompson and Abdullah would control the content of the programs within the guidelines set forth in the rules for public access to the cable television system.

18. Thompson also noted in the second proposal that scheduling difficulties had not prevented NSP from allocating space, time, and equipment (such as a computer and a typewriter) to religious and other groups within NSP.

19. On August 17, 1992, Thompson sent a step-one grievance to Hopkins, complaining about his lack of response.

20. On or about August 20, 1992, Thompson received a letter dated August 19, 1992, from Kenney, deputy warden at NSP.

21. Kenney explained that the response to the second proposal was delayed because he was consulting counsel.

22. On or about August 22, 1992, Thompson received a response from Hopkins dated August 21, 1992, relative to the step-one grievance.

23. Hopkins reiterated the information in Kenney's letter concerning the delay.

24. On September 16, 1992, Thompson appealed the response to the step-one grievance by filing a step-two grievance.

25. On or about September 23, 1992, Clarke, director of the Department of Correctional Services, responded to Thompson's step-two grievance, denying the plaintiffs permission to use the video equipment to produce a public-access program.

26. Clarke denied the request because "[t]he First Amendment does not require that prison inmates be allowed to produce video tapes" and because "any other inmate with a similar request" would have to be given permission if the plaintiffs were given permission.

27. NSP officials regularly make time, space, and equipment available for inmate organizations and meetings, including religious meetings.

28. Although there is something of a dispute as to whether the practice continues, members of NSP's African Cultural Association, known as Harambee, have used video and other equipment supplied by persons outside NSP to film video programs involving inmates, and these programs have been aired on the public-access channel of the local cable television system.

## II.

■ As the plaintiffs concede in the well-written brief submitted by their appointed counsel, the question of qualified immunity is essentially a question of law. (Br. Opp'n Defs.' Mot. Summ. J. on Issue Qualified Immunity at 5.) As the plaintiffs also concede, in order to avoid the bar of qualified immunity, " 'the unconstitutionality of the conduct must be apparent from preexisting law.' " (Id. (quoting *Rutcke v. Dahm*, 707 F.Supp. 1121, 1135 (D.Neb.1988)).) In addition, Plaintiffs' counsel concede, as required by appropriate ethical considerations, that they "have not located any case arising under circumstances precisely matching the present situation." (Id. at 7.)

■ After carefully considering the facts and applicable law, it is apparent to me that the defendants are entitled to qualified immunity respecting the plaintiffs' claim for damages. The law in this area is simply not clear enough that a reasonable official would have understood that taking the actions complained of in this case would violate the constitutional rights of the prisoner plaintiffs. I shall briefly address Plaintiffs' arguments.

■ Plaintiffs correctly point out that for purposes of qualified immunity, in deciding whether something is "clearly established" the court is to examine whether there is a degree of factual correspondence between previous cases and the subject case, with the understanding that factual identity between

the cases is not required. *See Lappe v. Loeffelholz*, 815 F.2d 1173, 1177 (8th Cir. 1987). *Lappe* counseled the application of a "flexible approach" where "some factual correspondence" must be shown together with "well-developed legal principles" such that by taking into account the factual correspondence and well-developed legal principles a reasonable prison official, objectively judged, would understand that his or her conduct was constitutionally improper. *Id.*

I have applied the *Lappe* test to the facts of this case. From both a factual and a jurisprudential point of view, the cases cited by the plaintiffs are simply too far removed from the facts and issues in this case to suggest that these defendants could have or should have anticipated that their behavior was improper. *Compare, e.g., Mujahid v. Sumner*, 807 F.Supp. 1505, 1510–11 (D.Haw. 1992), *aff'd*, 996 F.2d 1226 (9th Cir.1993) tbl. (text in WESTLAW, No. 92–17082) (regulations regarding correspondence with members of the press).

The plaintiffs also argue that the defendants must have known their conduct was suspect because they allowed inmate members of an African–American cultural group to tape programs for broadcast on the public-access channel using equipment and supplies from persons outside NSP.[1] Assuming for the sake of argument that NSP allowed members of the cultural group Harambee to make tapes for broadcast on the public-access channel using equipment and supplies from private persons, that fact does not suggest that prison officials should have known they violated the plaintiffs' rights by denying them access to prison equipment and supplies.

The express purpose of the plaintiffs' attempted production of a public-access television program was to further their religious beliefs. The plaintiffs demanded that NSP, as a representative of the State of Nebraska, provide them with the production equipment and supplies necessary to further their religious beliefs. From a constitutional perspective, it is one thing to allow a cultural group to produce a public-access television program using supplies and equipment provided by third parties, and quite a different matter for the state to "entangle" itself with the publication of the plaintiffs' religious views by providing the production facilities.

The plaintiffs also argue that because the penitentiary allows inmate groups to use equipment, such as computer equipment, located in the NSP chapel, the refusal of NSP to allow its facilities to be used for production of a cable television program is suggestive of the "clearly established" right of the plaintiffs to produce such programming. Once again, it is one thing to allow NSP facilities to be used by inmates to exercise their religious beliefs within the walls of the prison, and an entirely different matter to require NSP to provide the production facilities to broadcast a television program intended to advance the religious beliefs of the plaintiffs to a viewing audience outside the prison.

In summary, the contours of the alleged constitutional right which the plaintiffs claim the defendants violated in this case were not clear enough that a reasonable official would have understood that what he or she was doing violated that right (if it exists at all). Accordingly, the motion for summary judgment on qualified immunity must be granted.

IT IS ORDERED that the motion for summary judgment (Filing 31), limited to the issue of qualified immunity, is granted, and defendants Harold W. Clarke, Frank X. Hopkins, and Mike Kenney shall have no liability to the plaintiffs for damages.

---

1. There is a factual dispute in the record. The defendants contend they allowed video taping on one occasion but no longer permit this activity to occur. The plaintiffs contend the activity continues today. While this dispute is unimportant to the motion for summary judgment on qualified immunity, it should be carefully clarified if this case progresses. For purposes of the motion for summary judgment on qualified immunity, I have assumed that NSP allows members of the African–American Cultural Association, or Harambee, to make tape programs for broadcast on the public-access channel using equipment and supplies provided by private persons.